IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT

2007 JAN 19  A 8 22

CLERK _____
SO. DIST. OF GA.

BETTY J. BAILEY,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )       CV 105-193
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social Security     )
Administration,                     )
                                    )
        Defendant.                  )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Betty J. Bailey ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Period of Disability and Disability Insurance Benefits under the Social Security Act. Upon consideration of the briefs submitted by counsel, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of Title 42, United States Code, Section 405(g), that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

## I. BACKGROUND

Based upon claims of disability dating back to March 18, 1997, Plaintiff applied for disability insurance benefits on September 14, 1998.[1]  Tr. ("R."), pp. 85-87.  The Social Security Administration denied her original claim and her request for reconsideration.  R. 71-74, 77-80.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  R. 81.  After a hearing in which Plaintiff, who was accompanied by an attorney, testified on her own behalf and in which a vocational expert ("VE") gave testimony, the ALJ issued an unfavorable decision dated December 22, 1999.  R. 16-27, 37-68.  The Appeals Council ("AC") declined Plaintiff's request for review and the ALJ's decision became the Commissioner's final decision.  R. 8-10.  However, on August 16, 2001, the Honorable Dudley H. Bowen, Jr., United States District Judge, reversed the Commissioner's final decision and remanded the case for additional proceedings, including proper evaluation of the opinions of Dr. John Bieltz, Plaintiff's treating orthopedic surgeon.  R. 529-40.

A second hearing was held on April 30, 2002, before another ALJ.  R. 612.  After the second hearing in which Plaintiff, who was accompanied by an attorney, testified on her own behalf and in which a VE gave testimony, the ALJ again issued an unfavorable decision dated September 20, 2002.  R. 515-21.  Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date.

2. The medical evidence establishes that claimant's history of lumbar laminectomy X2 (severe impairments), with diabetes, bronchitis,

---

[1] Plaintiff's last insured date was December 31, 2002.  R. 459.

2

asthma, obesity, and features of depression (non-severe) is a severe impairment as defined in the regulations (20 C.F.R. § 404.1521).

3.     Claimant's impairments are not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. § 404.1520).

4.     The claimant has the residual functional capacity to perform unskilled sedentary work, as defined in the regulations, with restrictions that require no prolonged standing, sitting, or walking; alternate intervals of sitting/standing for no more than 45-60 minutes; and an environment free of heights, dust, fumes, smoke, and moving machinery. The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

5.     Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, based upon her age, education, work experience, testimony of the VE, and using Medical-Vocational Rule 201.29 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a weigher, order clerk, sorter, or a grader. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(f)).

R. 519-21.

Plaintiff requested review of the second ALJ's decision by the AC and submitted additional evidence in support of her request. R. 463-508, 509-11. The AC declined Plaintiff's request for review, and the ALJ's decision became the Commissioner's final decision. R. 459-62. Having failed to convince the AC to review her case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal of that adverse decision. Plaintiff now argues that (1) the ALJ and the AC failed to properly evaluate the opinions of Dr. Bieltz, (2) the ALJ and the AC erred in determining that Dr. Bieltz's records and opinions would not rule out sedentary work, (3) the ALJ and the

3

AC erred in determining that Plaintiff had the residual functional capacity ("RFC") for sedentary work and, in making this determination, failed to properly consider her subjective testimony, (4) the decision was not supported by substantial evidence, and (5) the AC erred in determining that even after the two additional lumbar surgeries following the decision that Plaintiff could still perform a reduced range of sedentary work.  (Doc. no. 7, pp. 1-2).

## II.  THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions:  (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d

4

at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual

findings, it must uphold the Commissioner even if the evidence preponderates in favor of the

claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire

record; a decision that focuses on one aspect of the evidence and disregards other contrary

evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548

(11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her

conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d

1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal

conclusions are not subject to the substantial evidence standard). If the Commissioner fails

either to apply correct legal standards or to provide the reviewing court with the means to

determine whether correct legal standards were in fact applied, the Court must reverse the

decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  The Opinions of Plaintiff's Treating Physician

This case was previously remanded because the opinions of Plaintiff's treating

orthopedic surgeon, Dr. Bieltz, were not reconcilable with the ALJ's ruling and were not

properly discredited. R. 535-37. Plaintiff alleges that the ALJ failed to properly evaluate the

opinion of Dr. Bieltz on remand. (Doc. no. 7, p. 16). When considering the ALJ's treatment

of Dr. Bieltz's opinion, it is well-settled that in the Eleventh Circuit, a treating physician's

opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th

Cir. 1986) (per curiam). Refusal to give a treating physician's opinion substantial weight

requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Finally, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 404.1527(e).

Dr. Bieltz stated that Plaintiff lacked the ability "to perform any type of prolonged standing walking or lifting." R. 451, 536. In contrast, the first opinion of the ALJ found that Plaintiff "retained the residual functional capacity ("RFC") to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; she can stand and walk, in combination, for 1 hour without interruption and for a total of 4 hours in a normal workday." R. 23, 536. On remand, however, the ALJ determined that Plaintiff only retained the RFC to perform: "unskilled sedentary work with no prolonged standing, sitting, and walking, with alternate sitting/standing for 45-60 minute intervals, and with no heights, dust, fumes, smoke, or

6

moving machinery."[2] R. 518. This statement of Plaintiff's physical limitations, as opposed to the prior findings of the ALJ's opinion, is not inconsistent with Dr. Bieltz's opinion, as it does not require "prolonged standing walking or lifting." R. 451, 536. As such, it is apparent that, in this regard, Dr. Bieltz's opinion was properly given substantial weight and, therefore, discrediting his opinion was unnecessary when formulating the above-stated RFC.

## B. The Side Effects Attendant to Plaintiff's Medication

Plaintiff also argues that the ALJ failed to properly consider Plaintiff's subjective testimony, particularly the side effects attendant to Plaintiff's narcotic pain medication, and, as a result, failed to properly determine Plaintiff's RFC. (Doc. no. 7, pp. 20-21). SSR 96-7p requires the ALJ to consider, among other things, the "dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in addition to objective medical evidence in assessing the credibility of a claimant's complaints of pain. Accord 20 C.F.R. § 404.1529(c)(3)(iv); see also 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.0012 ("[A] pain medication may relieve an individual's pain completely, partially, or not at all. It may also result in adverse effects, e.g., drowsiness, dizziness, or disorientation, that compromise the individual's ability to function. Therefore, each case

---

[2]      Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

7

must be considered on an individual basis, and include consideration of the effects of treatment on the individual's ability to function.").

Additionally, an ALJ fails in his duty to develop fully the record when he does not make findings about the effect of prescribed medication on a claimant's ability to work. Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981); see also Lacy v. Barnhart, 309 F. Supp.2d 1345, 1352 (N.D. Ala. 2004) (reversing denial of benefits where, *inter alia*, ALJ "failed to consider the effects of the side effects of plaintiff's medication"). As the Eleventh Circuit has explained, "It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." Cowart, 662 F.2d at 737. The court in Cowart went to on to quote with approval the following language from a First Circuit case:

> The present record contains no medical evidence regarding whether appellant's medication was in "unusually large doses" or whether its side effects might conceivably be disabling. While appellant's claim might be exaggerated, a layman is in no position to make any such determination on this record. It would have been appropriate for the administrative law judge to have sought further medical evidence, or to have made some further inquiry, since appellant raised the question. At [the] very least, the administrative law judge should have made a finding on appellant's claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored.

Id. (internal citations omitted).

Plaintiff's MRI results of February 23, 1998, in addition to illustrating her previous right laminectomy at L5-S1, also revealed annular bulging at L5-S1, L4-5, L3-4, and L2-3. R. 371-72. As a result, Plaintiff subsequently underwent a decompression laminectomy to L5-S1. R. 575. Following this surgery Plaintiff had a significant amount of scaring and chronic pain. Id. To control her pain, Plaintiff was prescribed an assortment of pain

8

medications throughout the time period following the onset of her alleged disability, including Oxycontin, Vicodin, Ultram, Tylenol #3, and Percocet. R. 517, 564, 567-68, 578-81, 601. In addition, Plaintiff was prescribed Xanax and Ambien to help her sleep. R. 561, 567. On April 30, 2002, the date of the second hearing, Plaintiff was taking Percocet and Ultram for pain, as well as various other medication relating to her other ailments. R. 546, 625. When the ALJ questioned Plaintiff regarding the side-effects of the Percocet she stated, "They make me sleepy. They make me really sleepy. I get - - they make me kind of woozy headed." R. 625.

The Commissioner contends that the ALJ properly acknowledged Plaintiff's significant pain but correctly accepted Dr. Bieltz's finding that this pain was controlled with medication such that she could function within the RFC set forth above. (Doc. no. 9, p. 13). While portions of the medical evidence reflect that Plaintiff responded to the pain medication without side effects, the ALJ's bare conclusion that Plaintiff "remained functional with medicine, with no side-effects[,]" is insufficient in light of other medical evidence and Plaintiff's contrary testimony. R. 517; see McCruter, 791 F.2d at 1544 (findings of fact must be grounded in the entire record, not focusing on one aspect of the evidence and disregarding other contrary evidence).

Dr. Bieltz stated on May 14, 2001, that Plaintiff was "feeling lethargic from the Percocet [and] . . . I am going to try and wean her off [as] . . . I do feel there is some addictive potential." R. 554. These statements reveal two possible side effects of Plaintiff's

9

pain medication, drowsiness and dependence.[3]  In fact, although not explicitly setting forth the attendant risks, Dr. Bieltz indicates that in reference to almost every pain medication prescribed, "[Plaintiff] understands the risks with this medicine."  R. 556, 562, 564, 566. Even with these risks, on August 15, 2001, Dr. Bieltz was forced to renew the Percocet concluding that it is "really the only thing that is keeping [Plaintiff] functional."  R. 551. When questioned regarding the Percocet, Plaintiff reiterated to the ALJ the problem of lethargy associated with her medication, stating, "They make me sleepy.  They make me really sleepy.  I get - - they make me kind of woozy headed."  R. 625.

     With the benefit of the VE's opinion regarding suitable employment in reference to the above stated RFC, the ALJ concluded that Plaintiff retained the RFC to perform sedentary unskilled work as a weigher, order clerk, sorter, or grader.  R. 519.  The ALJ's decision, while listing the various pain medications prescribed to Plaintiff, contains no analysis addressing whether the side effects of these medications, which are non-exertional limitations, would render her unable to perform these jobs.  R. 517-19.  The ALJ does not factor the side effects of Plaintiff's medication into his credibility determination, as he is required to do.  The ALJ also does not consider whether Plaintiff's medications themselves may be a cause of, or contribute to, Plaintiff's disability.

     Plaintiff's counsel raised the issue regarding the alleged side effects when questioning the VE.  Specifically, Plaintiff's counsel questioned whether a person taking pain medicine

---

[3]Percocet can cause lightheadedness, dizziness, and sedation, and it is a controlled substance which "can produce drug dependence of the morphine type." Physicians' Desk Reference 1173 (61st ed. 2007).

10

who was affected by drowsiness or sleepiness would be impaired in their ability to perform the jobs identified. R. 632. The VE responded that he could not comment on the extent of such an impairment because a medical doctor would have to address the degree, frequency, and longevity of the medicine, but did opine that these jobs require that a person be able to concentrate on the job at hand. Id.

In sum, based upon the above stated evidence in the record, the ALJ should have been cognizant of Plaintiff's medications and the possible effects on her ability to work. As such, the ALJ should have addressed the impact of the potential side effects of these medications on Plaintiff's ability to work in the opinion.

The ALJ's failure to consider the side effects of Plaintiff's medications is error and warrants remand under sentence four of Section 405(g). Because the Court recommends that this case be remanded so that an ALJ may consider the side effects of Plaintiff's medications in conjunction with other evidence of record, the Court need not address the other contentions in Plaintiff's complaint.[4]

---

[4]It is not entirely clear if Plaintiff is seeking a remand under sentence four or sentence six of Section 405(g). For example, although Plaintiff argues that the ALJ's decision is not supported by substantial evidence, she also contends that the AC erred in denying review even after Plaintiff submitted new evidence of two additional lumbar surgeries following the ALJ's decision. However, the Court can only consider what was before the ALJ when analyzing if the ALJ's opinion was supported by substantial evidence. Falge v. Apfel, 150 F.3d 1320, 1322-23 (11th Cir. 1998). Nevertheless, as the Court is recommending that the case be remanded based on an error by the ALJ, the possibility that Plaintiff is also seeking a sentence six remand need not be addresses further.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of Section 405(g), that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.[5]

SO REPORTED and RECOMMENDED this 19th day of January, 2007, at Augusta, Georgia.

_W. Leon Barfield_
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5]The Court recognizes that Plaintiff requested a reversal of this case without a corresponding remand. (Doc. no. 7, p. 22); 42 U.S.C. § 405(g) (Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing"). However, the circumstances do not justify a reversal without a corresponding remand in this action.

12